Michael E. Jordan. I'd like to reserve three minutes of my time for rebuttal. All right. You have a clock there, and I'll try to help you, but keep your time as well. Okay. Thank you, Your Honor. Thank you. Summary judgment against Mr. Jordan was improper in this case because the evidence submitted by the defendants in support of their summary judgment motion was contradicted by their own prior statements to Mr. Jordan. Statements to Mr. Jordan by defendants Dr. Smith and Dr. Pappenfuss and by their expert, Dr. Norris, established that Mr. Jordan required physical therapy and specialized care throughout the time of his incarceration at Avenal Prison. I've disputed that he didn't receive this care until more than a year and two months after he had arrived at Avenal in December of 99 is when he was finally transferred. It is because they're the statements by doctors established the medical necessity for the treatment, that's why it was unnecessary for Mr. Jordan to submit his own expert testimony. That's also the reason why the case, the Hutchinson case on which defendants rely was inapplicable to this case. This is not a situation in which Mr. Jordan proposed his own medical opinion as to what treatment was necessary. Rather it's the doctors themselves who conceded to him at the time that he was under their treatment that certain treatment was necessary, specifically physical therapy and special. Let me ask you, does it boil down to some interpretation of whether needing a chrono for PT meant self-PT or professional PT? Is that sort of what it boils down to in terms of the factual issue? Your Honor, are you asking whether it boils down to is there a distinction between formal physical therapy and the self-physical therapy exercises? Is that the factual issue that somebody has to figure out? Your Honor, I think that issue has been resolved already, again, by the statements of the doctors themselves. Dr. Pappenfuss, who is one of the defendants, in his declaration distinguishes between quote, self-physical therapy exercises and formal physical therapy. I won't provide sites of the record unless the court requests it. But that's a distinction that the defendant makes in his own declaration, a distinction that makes no sense if they're the same thing. Similarly, the first time that Mr. Jordan was seen by Dr. Pappenfuss and Dr. Smith, he asked them to transfer him to somewhere where he could get physical therapy. And they said, we won't do it because prison administration doesn't like to transfer inmates for medical reasons. Again, they would have no reason to say that if they viewed the exercises that they gave him as the same thing as physical therapy. Another question I have is if you divide the two defendants, you have to look at each one separately as far as the evidence. On Dr. Pappenfuss, he apparently misdiagnosed your client with respect to the rheumatoid arthritis. That would appear to be a negligence problem. So I'm wondering how was the basis of a factual issue as far as Dr. Pappenfuss being aware of the need to transfer? If he thought the person didn't have this problem to begin with, which it turns out to be wrong, but that wouldn't be an Eighth Amendment problem, that would be a negligence problem. Dr. Pappenfuss's misdiagnosis occurred fairly early on in November of 1998 and December of 1998. Subsequently, Dr. Pappenfuss noted the need for a rheumatology consult, and even though he didn't do it for another month and a half, it was ultimately Dr. Pappenfuss who referred Mr. Jordan to a rheumatologist, Dr. Norris, at the CMC facility. So it's clear that Dr. Pappenfuss was aware that Mr. Jordan had rheumatoid arthritis, even though there was initially that misdiagnosis. And as the court pointed out, that's a fact that supports a finding of negligence, one of the claims that Mr. Jordan lost summary judgment on. But negligence isn't enough. There has to be some evidence of deliberate indifference in order to escape summary judgment. Where is the evidence of deliberate indifference? Which seems to me a much higher standard than medical malpractice. The court is correct that it is a different standard. The Farmer v. Brennan case from the Supreme Court articulates it as reckless disregard. So there's an element of intent that's not present in negligence. Here there's really, I think, three different things that illustrate the support of finding of deliberate indifference. One is just the sheer amount of time that passed while Mr. Jordan was at Avenal before he was finally transferred. This is not a situation where it was a week or two weeks. We're talking about a year and two months. During that time, his severe condition was obvious to even lay people. Mr. Jordan submitted declarations from five individuals who were either incarcerated with him at Avenal or who visited him at Avenal, who all said it was obvious to them that he was having trouble standing, that he was in constant pain. If you put that together with Mr. Jordan's own testimony that he suffered greatly during the time that he was at Avenal, that he was unable to get up to get his medication, he was forced to urinate in a coffee can in his cell because he couldn't make it out of the cell, and on top of that, the long span of time before he got the appropriate treatment. Well, I see your point, and maybe before a jury it may carry the day, but in this case you have the actual person who did the operation saying that it even met the lower standard. All we have in opposition to that is lay testimony. As you look through the record, it isn't that he was shunted away. I looked at every entry. He was seen quite frequently by these doctors. They were monitoring his case carefully, and maybe they should have sent him for consultation earlier, but is that deliberate indifference, failure to send earlier when you're monitoring the person all the way through? Is there a case upon which we can rely that would tell us that we must reverse that summary judgment when all the medical evidence is one way and the only thing we have in the other way is over a long period of time he was monitored? Your Honor, I'd submit two points on that question. The first of all is a factual argument that it's not that there's no opposition to the testimony of Dr. Norris. Dr. Norris' own statements to Mr. Jordan indicate he thought at the time in 1998 and 1999 that physical therapy and specialized care should have been submitted. What he told Mr. Jordan when he first saw him in May 1999 is, number one, if you don't get physical therapy in the next six months, you will be unable to rise from a seated position. The next thing he said is when Mr. Jordan finally did arrive at Avenal, Dr. Norris said, we've been trying to get you here since May of 1999, more than five months before. So Dr. Norris at the time made statements indicating he thought these two types of care were necessary. Now, his declaration, as Your Honor pointed out, contradicts that fact because now he says the standard of care was met. But that's exactly why there's a factual dispute, because the fact of what was the necessary treatment, which is established by medical testimony only, is disputed. The doctors have contradicted themselves, thereby creating the factual dispute as to what the standard of care is in the first place. I'd also point out to the Court the case of Archer v. Dutcher, which is a Second Circuit case, 733 F. 2nd 14. The case in which the Second Circuit reviewed the facts and said, yes, there is history of ongoing care here, but at the same time, the facts shown by the plaintiff's testimony that there was an unnecessary delay in treatment is enough to raise a factual issue as to the presence of deliberate indifference. Would you like to reserve the remainder of your time? Yes, thank you, Your Honor. Good morning, Your Honors. I'm Deputy Attorney Michael G. Lee. I'm representing Drs. Kaplan, Puss, and Smith. And it is the position, of course, of the State that the district court properly granted summary judgment in this case. And the summary judgment granted by the district court is not only supported by the facts. It's supported by this Court's jurisprudence as well as the Supreme Court's. And would you concentrate on the facts? You've heard a couple of factual disputes identified. Why don't you just tell us why they are not factual disputes? Well, Your Honor, first of all, the claim that Dr. Norris said X, Y, or Z to Mr. Jordan is hearsay. Why would that be hearsay? He's not a defendant. No, but he is a representative of a party opponent and important parcel of the State, is he not? I just have trouble thinking that he isn't basically a representative of the State, which is the same thing we have for Dr. Smith and Pappenfuss. Well, Dr. Smith and Dr. Pappenfuss are here as personal persons, liable only in their personal capacity. Dr. Norris, therefore, as a supposed representative of the State, he can't be because that's precluded by the 11th Amendment. And therefore, there can't be any attribution to either Dr. Smith or Dr. Pappenfuss related on some statement made by Dr. Norris. And I would point out to the Court that all of these representations made concerning Dr. Norris are completely undermined by the fact that Mr. Jordan was transferred to the California men's colony in May 1999 for consultation and necessary treatment. If there was any belief on Dr. Norris' part or anyone else's at the California men's colony, Mr. Jordan would have remained there. He would have received any surgery that was necessary or any other type of treatment necessary to his condition, but he was not. And the report generated at the time did not indicate any disagreement whatsoever with the treatment. In fact, pursuant to a request by Dr. Pappenfuss, the only thing that was noted in that record is that you can try placanil instead of methotrexate as one of the drugs used to treat the rheumatoid factor. And further, this claim of a misdiagnosis, it doesn't exist. There was no misdiagnosis. The only thing that happened in this case is that when Mr. Jordan was tested repeatedly, the lab tests showed no presence of the rheumatoid factor. In fact, again, when Mr. Jordan was sent to the California men's colony and Dr. Norris engaged in the consultation, Dr. Norris described his condition as seronegative rheumatoid arthritis, again, showing no misdiagnosis whatsoever in regard to the case of Mr. Jordan. And again, in terms of the facts, when you look at the facts, we're talking about treatment, okay, treatment by Dr. Norris and Dr. Smith. Irrespective of whether or not Mr. Jordan was transferred, the case here hinges on whether or not the treatment was appropriate. And I would submit to the court that a reference to a footnote in the supplemental opening brief by Mr. Jordan demonstrates conclusively that he was. It shows that he was given the drug therapy that he should have gotten. It shows further that he was provided with physical therapy exercises that he could do. And again, I would submit to the court that this whole idea about a person having to sit in front of a physical therapist or a doctor or someone else is the only way that you may receive physical therapy is not even the standard of care in the state of California. Isn't that the factual issue? In other words, you know, we might think, none of us are doctors. We don't know the answer to that question. So the factual issue posed, as I understand it, is you have Dr. Smith saying that he needs this chrono for PT, and he doesn't, and it's not available at Avanal, and then there's a statement that the reason we want to transfer you is because of administrative reasons. Doesn't that raise enough of a factual issue that we can't answer the very question that you have now tried to answer for us, which is self-assessment. Self-physical therapy is the same as medically administered physical therapy. Well, I would submit no, because again, Dr. Norris provided an expert declaration, and his expert declaration supported the, quote, self-physical therapy. It said it was appropriate. We also see in the record that when Mr. Jordan reported to Dr. Pappenfuss and he had been engaging in the, quote, self-physical therapy, that his condition was much improved. That's a note dated from August of 1999, and it shows that. It shows that he had improved range of motion, improved ability to move back and forth. The contention again, too, in terms of the whole transfer issue. We don't have any evidence in the record related to whether or not these doctors could transfer Mr. Jordan. The fact of the matter is, if you go back in the record, what it shows is that Mr. Jordan requested transfer to either the California medical facility or the California men's colony from Chuck Walla Valley State Prison. The people who could transfer him, transferred him to Avanall. Neither Dr. Smith or Dr. Pappenfuss had a single thing to do with that transfer. And furthermore, in December of 1999, Dr. Davis, who was the chief medical officer at Avanall, answered a form administrative appeal sent to him by Mr. Jordan requesting a transfer. That administrative appeal was answered initially by Dr. Davis and on up the line to the associate warden and chief deputy warden at the prison, and they were the ones who made the transfer. We go through the record again in regard to the consultation. Dr. Norris and Dr. Pappenfuss requested a transfer to CMC for consultation. Why? Because he couldn't do it unilaterally. Only when CMC could take him, only when the prison population there allowed a move could he be moved. And he was moved at that time. After he was sent back to Avanall from CMC by Dr. Norris and an attempt was made for a permanent transfer, you see in the record where Dr. Pappenfuss is requesting and trying to justify the transfer so that the authorities at CMC would take Mr. Jordan. We don't have a record of any doctor interfering with that transfer. We don't have a record of a doctor delaying that transfer. They couldn't do it. The fact is classification people have to transfer inmates. And when they do, the inmate is transferred. If they don't and they don't accept that the inmate should be transferred, he can't be. On this record, what we have is a record of consent information to the inmates on different levels. But I'm not attending for thepatients, because that would require one of the inmates to register for consent information that the invaker wanted according to adult instruction. They ended up signing an email with theoniknsmithwithadop.com and they said the inmate should be propped to the city but this is not a good procedure to do. I'm telling you now. You couldn't do it at this point. If they did, and they did, we would get us to a component that talks more about continual treatment, a record of treatment with drugs appropriate to the condition. A condition that we all need to remember is a chronic condition. It's a condition that only worsens. The only thing that you can achieve with medication and physical therapy is in some cases you can slow the deterioration. That's the only thing that we can do with Mr. Jordan received appropriate medication. He also was given exercises that would allow him to maintain the strength in his legs, to maintain the range of motion, which he could do, and that is all that could have been accomplished under any circumstances. And I submit to the court that not only did the district court properly grant summary judgment on the Eighth Amendment issues, but it also granted summary judgment appropriately on the negligence issues. Thank you very much. Thank you. You have just over a minute for your rebuttal. Then I will spend that time rebutting a couple of specific points. One argument that counsel made is that if more treatment had been provided, that in addition the order at page 282 in the supplemental record submitted by Mr. Jordan indicates it was ordered that no overnight stay happen at CMC. So it was a one-day visit for a consultation. So there's no evidence that what would have happened, as counsel suggested. Title 15, section 3350 of the California Code of Regulations indicates that decisions on transfer and treatment in the United States should be based on the recommendations of doctors. The question in this case is, what did Dr. Smith and Dr. Papenfuss do? I understand that counsel argues they didn't have the power, but the question is, what attempts did they make? If we had a case where they tried and tried and tried to provide the treatment that they themselves admitted was necessary and failed, that might be a defense. But that might be a defense. But in fact, when he sent that August letter to evaluate the transfer, he said that Mr. Jordan could walk upstairs and care for himself. But on July 26th, Dr. Papenfuss had written a chrono saying that Mr. Jordan was totally disabled. Those two facts contradict each other and indicate that Dr. Papenfuss was trying to possibly obstruct the transfer and certainly wasn't doing his best to make it happen. Your Honor, I believe that as the court pointed out, that there's a hearsay exception that's applicable here as Dr. Norris is an agent, acting as an agent for the defendants. He's an agent of the state, but aren't the defendants being sued individually? They are, Your Honor. Well, how is he an agent of theirs? Because he was acting pursuant to a referral and he was authorized by them to discuss the treatment with Mr. Jordan. I don't see that at all, frankly. I respect that, Your Honor. In addition, this court has recently held in Fraser v. Goodale that a party opposing summary judgment can do so on the basis of hearsay because the focus on summary judgment is not on the form of the evidence, which depends on the circumstances of trial, but rather on its content. Well, let me press you a little bit more realistically. You have now a expert on the disease saying they received standard treatment. He's going to say that again if there's ever a trial. How are you ever going to refute that? Well, Your Honor, the only rheumatology expert in this case is Dr. Norris. Dr. Smith and Dr. Papin. That's right. Norris has said that. Yes, Your Honor. He will say that again at trial. And how do you think the trial is going to end? At a very minimum, Your Honor, his statements to Mr. Jordan would impeach that testimony and the jury would be free to not believe that. If they're permitted, if they're admitted, they may not be admitted in the trial. Well, Your Honor, I'd submit that that would depend on the circumstances at trial, but that... What would the circumstances be? When we move on from summary judgment to a trial, you don't have the summary judgment exception for hearsay. What's the exception that would let Norris' statements to your client end? Well, I've already argued to Your Honor about 801D2. I would also submit that 807 would apply in this case because... 807 meaning? The residual exception, Your Honor. A what? The residual hearsay exception, Your Honor. How would you tease that out? Well, it's evidence of a material fact, which is the first requirement of evidence rule 807. It is more probative than anything else that we have in terms of what Dr. Norris' opinion was at the time. And there's none of the concerns that normally motivate the exclusion of hearsay, which is to say... Well, of course there is. It's a very self-interested statement by your client. But it's also a statement that is against the interest of Dr. Norris even at the time. If he's believed, but I mean... Well, wouldn't... Wouldn't the easy answer be if Dr. Norris is called to testify, then this would come in as impeachment, but not substantive evidence. It would certainly come in as impeachment test, potential impeachment. That's correct, Your Honor. That's about it. All right. I think as a worst-case scenario, that's about it, although it might be admissible substantively. All right. Thank you. Mr. Lyons, you've volunteered for this pro bono project, and on behalf of the court, we want to thank you for the time and effort. You've obviously done an excellent job in preparation and carried out your duties and responsibilities in behalf of the court effectively. This is the only circuit where the pro bono program works effectively. Wherever we've needed a lawyer, the bar has stepped forward, and you're to be commended for doing so as a fine, outstanding representative of the bar of the court. Thank you for that. Thank you. We thank both counsel. I think the state will also agree it makes it a little easier when you have represented parties in terms of the briefing and testimony submitted. The next case for argument is Annazor v. Ashcroft.
judges: Wallace, Noonan, McKeown